UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                                        Chapter 11

FLUSHING LANDMARK REALTY LLC,            Case No.: 20-73302-reg

                    Debtor.
-----------------------------------------------------------X

## DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

Flushing Landmark Realty, LLC, the debtor and the debtor-in-possession (the "Debtor") in this chapter 11 case, proposes the following Third Amended Plan (the "Plan") of reorganization pursuant to Section 1121(a) of title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I

For the purposes of this Plan (as defined herein), the terms set forth in this Article I shall, subject to the provisions of this paragraph, have the respective meanings hereinafter set forth. Singular terms shall include the plural and plural terms shall include the singular. Definitions herein for any term shall control over any contrary definitions for any such term in the Bankruptcy Code (as defined herein); however, terms which are used in this Plan which are undefined herein shall have the meaning given for such term in the Bankruptcy Code.

1.1    **41-60** shall mean 41-60 Main Street LLC, the secured creditor.

1.2    **41-60 Secured Claim** shall mean the Secured Claim of 41-60 against the Debtor and the Debtor's estate.

1.3    **41-60 Settlement Agreement** shall mean the Stipulation and Order by and among the Debtor, Lucky Star-Deer Park LLC, Victoria Towers Development Corp., Wu, and 41-60, a copy of which is Exhibit "" to the Disclosure Statement.

1.4    **Administrative Expense Claim** or **Administrative Claim** shall mean that portion of any Unsecured Claim which is a cost, or expense of administration of the chapter 11 case entitled to priority under section 507(a)(2) of the Bankruptcy Code and which is an Allowed Claim, including without limitation, (a) any actual, necessary costs and expenses of preserving the Debtor's Estate and of operating the business of the Debtor; (b) all Professional Fees; and (iii) all fees or charges assessed against the Debtor's Estate under chapter 123 of title 28 of the United States Code.

1.5    **Allowed Administrative Claim** means all or that portion of any Administrative Claim which is an Allowed Claim.

1.6    **Allowed Claim** shall mean a Claim which is not a Disputed Claim which (a) was listed in the Debtor's schedules, other than a Claim which was listed in the Debtor's schedules as

contingent, unliquidated, disputed or unknown, provided that such listing was not superseded either by the filing of a proof of claim by a Claimant with the Bankruptcy Court on or before the Claim Bar Date or by a written stipulation entered into between the Claimant and the Debtor and approved by the Court by the entry of a Final Order (in which event such listed Claim shall automatically be deemed expunged and constitute a Disallowed Claim), or (b) was filed in the appropriate form with the Clerk of the Bankruptcy Court on or before the Claim Bar Date, for a fixed, non-contingent definite amount, provided that such filed Claim was not superseded by a written stipulation entered into between the Claimant and the Debtor and approved by the Court by the entry of a Final Order (in which event such filed Claim shall automatically be deemed expunged and constitute a Disallowed Claim), or (c) is allowed in whole or in part by a Final Order including but not limited to a Final Order which authorized and approves a written stipulation between a Claimant and the Debtor as to the Claim.

1.7    **Allowed General Unsecured Claim** shall mean that portion of an Allowed Unsecured Claim which is not (a) an Allowed Administration Claim, or (b) an Allowed Priority Tax Claim.

1.8    **Allowed Priority Tax Claim** shall mean that portion of any Governmental Unit's Allowed Unsecured Claim for taxes which is entitled to priority treatment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.9    **Allowed Secured Claim** shall mean that portion of an Allowed Claim for which a Claimant asserts to hold a valid, perfected and enforceable Lien, security interest or other interest or encumbrance in property in which the Debtor holds an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, which has not been objected to, or if objected to, has been Allowed by Final Order of the Bankruptcy Court. Pursuant to section 506(c) of the Bankruptcy Code, if and to the extent that an Allowed Secured Claim is secured by Property the value of which, after any recovery under Section 506(c) of the Bankruptcy Code is greater than the amount of such Claim, there shall be allowed to the holder of such Claim, interest on such Claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such Claim arose.

If the validity of the underlying Lien is Disputed by the Debtor, then the Claimant shall only be deemed to hold an Allowed Secured Claim if and to the extent that the validity and amount of the Lien is approved by a Final Order of the Bankruptcy Court.

1.10    **Allowed Unsecured Claim** shall mean that portion of any Allowed Claim which is not an Allowed Secured Claim, and Administrative Expense Claim or a Priority Tax Claim. Interest accrued after the Filing Date shall not be part of any Allowed Unsecured Claim.

1.11    **Ballot** shall mean a ballot for acceptance or rejection of the Plan, which shall be sent to all holders of Allowed Claims except for Administration Claimants and Priority Tax Claimants whose Claims are impaired under the Plan, by and pursuant to which the recipient of such Ballot shall be enabled and entitled to cast a vote with respect to the Plan.

1.12 **Bankruptcy Code** shall mean title 11 of the United States Code (11 U.S.C. §§ 101 et seq.) as now in effect or hereinafter amended. References in this Plan to a specific provision of the Bankruptcy Code shall be to the section number of such provision as of the date of this Plan.

1.13 **Bankruptcy Court or Court** shall mean the United States Bankruptcy Court for the Eastern District of New York, or such other Court as may hereafter be granted jurisdiction over the Debtor's bankruptcy case.

1.14 **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure pursuant to 28 U.S.C. § 2075, as now in effect or hereafter amended, and the Local Rules for the Bankruptcy Court of the Eastern District of New York or any Order entered by the Bankruptcy Court in this chapter 11 case.

1.15 **Business Day** shall mean any day other than a Saturday or Sunday, except if such day is a Legal Holiday as that term is defined in Bankruptcy Rule 9006.

1.16 **Cash** shall mean all cash and cash equivalents which evidence immediately available funds in United States currency.

1.17 **Chapter 11 Case or Case** shall mean the Debtor's chapter 11 case which is pending before the Bankruptcy Court, *In re Flushing Landmark Realty LLC* commenced on the Filing Date to which this Plan pertains.

1.18 **Claim** shall mean any and all asserted or alleged rights to (a) payment, whether or not such right is listed in the Debtor's schedules, and whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is listed in the Debtor's schedules, and whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.19 **Claim Bar Date or Bar Date** shall mean December 28, 2020 (with respect to non-governmental units) and April 28, 2021 (with respect to governmental units), which are the dates which were established by Final Order of the Bankruptcy Court dated November 17, 2020 as the final date for filing and/or assertion of any and all Claims which arose or may be deemed to have arisen against the Debtor or the Debtor's Estate, on or before the Filing Date.

1.20 **Claimant** shall mean any Person or Entity which possesses, or claims for any reason to possess, or may be deemed for any reason to possess, a Claim against the Debtor or the Debtor's Estate.

1.21 **Claims Register** shall mean the claims register maintained online, by the Clerk of the Bankruptcy Court, which list all Claims filed in this case.

1.22    **Confirmation** shall mean the entry of an Order by the Bankruptcy Court confirming the Debtor's Plan in accordance with the provisions of the Bankruptcy Code, regardless of whether it becomes a Final Order.

1.23    **Confirmation Date** shall mean the date upon which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to this chapter 11 case.

1.24    **Confirmation Order** shall mean the Order of the Bankruptcy Court confirming the Debtor's Plan pursuant to section 1129 of the Bankruptcy Code.

1.25    **Creditor** shall mean any Claimant whose Claim either (a) arose on or before the Filing Date; or (b) for any reason is deemed to have arisen on or before the Filing Date.

1.26    **Debt** shall mean the Debtor's or the Debtor's Estate's potential or actual liability on or with respect to a Claim.

1.27    **Debtor** shall mean Flushing Landmark Realty LLC, the Debtor and the Debtor-in-Possession herein.

1.28    **Debtor's Estate** shall mean and shall comprise all of the Debtor's property, to the extent and manner set forth under section 541 of the Bankruptcy Code.

1.29    **Debtor's Principal** shall mean the member's interest in the limited liability company.

1.30    **Debtor's Real Property** shall mean the Debtor's real property commonly known as 41-60 Main Street, Flushing, New York (the "Flushing Property").

1.31    **Disallowed Claim** shall mean (a) a Claim listed in the Debtor's schedules as contingent, unliquidated, unknown or disputed (in accordance with Bankruptcy Rule 3003(c)(4) a proof of Claim or Interest executed and filed in accordance with Bankruptcy Rule 3003 shall supersede any scheduling of that Claim or Interest in the Debtor's schedules), (b) a Claim which is deemed expunged or disallowed for the reasons set forth anywhere in the Plan, or (c) a Claim or any portion thereof which is disallowed by the entry of a Final Order of the Bankruptcy Court.

1.32    **Disclosure Statement** shall mean the Disclosure Statement relating to the Plan which is submitted by the Debtor pursuant to Section 1125 of the Bankruptcy Code as the same may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.33    **Disputed Claim** shall mean a Claim, or portion thereof, (a) as to which an objection to the allowance thereof, or a request for reconsideration, reclassification or review thereof, has been or is filed on before the last for the filing of such objection to Claims set forth in Section 5.9 of the Plan, or (b) was filed for an unknown or unliquidated amount, or as being contingent, and

is not fixed or liquidated under a Final Order of the Bankruptcy Court on or before the last date for the filing of objections to Claims as set forth in Section 5.9 of this Plan.

In no event shall any distribution be remitted for or on account of any Disputed Claim (a) unless, if only a portion of the Claim has been objected to, then payment shall be made on the undisputed portion thereof, or (b) if the entire Claim has been objected to, then until or unless the Claim or any portion thereof becomes an Allowed Claim, and to the extent only a portion thereof is fully and finally Allowed pursuant to a Final Order, distributions shall only be remitted for any on account of such Allowed portion.

1.34    **Distribution Dates** shall mean the dates upon which distributions shall be due to be made to Holders of Allowed Claims included in Classes 1-3 under the Plan.

1.35    **Effective Date or Effective Date of the Plan** shall mean either (a) the date of closing on the Exit Facility and funding thereon; or (b), in the event 41-60 does not receive the First Reduced Payment or Second Reduced Payment in accordance with the 41-60 Stipulation, the date on which the sale of the Real Property is closed.

1.36    **Entity** shall mean any individual, proprietorship, partnership, corporation, estate, trustee, and/or Governmental Unit, including, without limitation any form or method of business or charitable organization of Persons.

1.37    **Exit Facility** shall mean the exit financing facility, the terms and conditions of which shall be consistent with the terms and conditions set forth in the term sheet presented to the Court and may consist of other terms and conditions to be agreed to by and between, among others, the Debtor and Invictus.

1.38    **Exit Facility Documents** shall mean, collectively, the Exit Facility and any and all other agreements, documents, and instruments delivered or entered into in connection therewith, including and guarantee, agreements, pledge and collateral agreements, mortgages, and other security documents, each of which shall be in form and substance satisfactory to, among others, the Debtor and Invictus.

1.39    **Filing Date** shall mean the date of the commencement of the Debtor's chapter 11 case herein, being October 30, 2020, on which date the Debtor's petition was filed with the Bankruptcy Court.

1.40    **Final Order** shall mean an order, judgment, or other decree which is in full force and effect and shall become final in accordance with applicable law under the Bankruptcy Rules, in that it has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired or been waived in writing in a manner satisfactory to the Debtor, and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition or application for certiorari, rehearing, or review has been fully resolved by the highest court to which the order or judgment was appealed or from which certiorari from said ruling has expired or been waived in writing in a

manner satisfactory to the Debtor, and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending.

1.41    **First Reduced Payment** shall mean the amount of $112,987,675.37, as set forth in paragraph 6 of the 41-60 Settlement Agreement.

1.42    **First Reduced Payment Deadline** shall mean May 2, 2022.

1.44    **General Unsecured Claim** shall mean that portion of an Unsecured Claim which is not (a) an Administrative Claim; or (b) a Priority Tax Claim.

1.45    **Guaranty** shall mean any document executed by any party other than the Debtor, obligating a party other than the Debtor to make payment when due, whether by acceleration, or otherwise, of each and all of the Obligations (as said term may be defined in the Guaranty), together with interest thereon and, upon demand, any and all expenses including, without limitation, the fees and expenses of attorneys, if applicable, which may be incurred in collecting all or any portion of the Obligations and/or in enforcing any rights under such Guaranty, including, but not limited to the note and first mortgage on the Debtor's Real Property.

1.46    **Holder** shall mean the legal or beneficial holder of a Claim (and, when used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.47    **Invictus Real Estate Partners LLC** shall mean Invictus, the Debtor's proposed lender.

1.48    **Landmark Portfolio Mezz** shall mean Landmark Portfolio Mezz, a creditor with a claim against Jeffrey Wu.

1.49    **Landmark Portfolio Stipulation** shall mean that superseding stipulation among Wu, V WU, the Family Trust and Landmark Portfolio, resolving the claims of Landmark Portfolio.

1.50    **Lien** shall mean a charge against or interest in property, including, but not limited to the Debtor's property commonly known as 41-60 Main Street, Flushing, New York, 366 Carlls Path, Deer Park, New York and certain condominium units located at 13338 Sanford Avenue, Flushing, New York to secure payment of a debt or performance of an obligation.

1.51    **Ownership Interest or Interest** shall mean the 100% ownership interest of the Debtor's member, Flushing Landmark Mezz, of which Wu is the managing member.

1.52    **Person** shall mean an individual, corporation, partnership, joint venture, but does not include a Governmental Unit except as expressly set forth in section 101(41) of the Bankruptcy Code.

1.53    **Petition** shall mean the voluntary petition for relief under chapter 11 of the Bankruptcy Code which the Debtor filed to commence its chapter 11 case in the Bankruptcy Court.

1.54    **Plan** shall mean the Debtor's Plan of Reorganization and any exhibits thereto any documents delivered in connection herewith, and any amendments or modifications thereto.

1.55    **Pre-Petition** shall mean any date prior to the Filing Date.

1.56    **Post-Petition** shall mean any date from and including the Filing Date.

1.57    **Priority Tax Claim** shall mean that portion of any Governmental Unit's Unsecured Claim for taxes which is entitled to priority treatment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.58    **Priority Tax Claimant** shall mean the holder of a Priority Tax Claim.

1.59    **Professional Fees** shall mean all awards of compensation or reimbursement allowed under (a) Final Order[s] of the Bankruptcy Court issued pursuant to sections 330 and/or 331 of the Bankruptcy Code, in or in connection with the Debtor's chapter 11 case at any time from the Filing Date to and until the date of the issuance of the Confirmation Order.

1.60    **Pro Rata** with respect to a particular class of Claims, shall mean proportionally and *pari passu* so that the ratio of the amount of consideration distributed on account of an Allowed Claim to the holder of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all other Allowed Claims of the class in which the particular Claim is included to the amount of all Allowed Claims of this class.

1.61    **Reorganized Debtor** shall mean the Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Confirmation Date.

1.62    **Schedules** shall mean the schedules of assets and liabilities, creditors and other information disclosed in connection therewith, as filed by the Debtor in connection with this chapter 11 bankruptcy case and as may be amended.

1.63    **Second Reduced Payment** shall mean the amount of $112,987,675.37 as a *per diem* amount of $25,000.00 for each calendar day beyond May 2, 2022, as set forth in paragraph 6 of the 41-60 Settlement Agreement.

1.64    **Second Reduced Payment Deadline** shall mean June 24, 2022, as set forth in paragraph 6 of the 41-60 Settlement Agreement.

1.65    **Secured Claim** shall mean a Claim secured by a valid, perfected and enforceable lien in assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or acknowledged by the Debtor in writing or provided for in the Plan.

1.66    **Term Sheet** shall mean the Debtor Term Sheet dated January 26, 2022 among the Debtor and Invictus (among others) (as may be amended, modified, or supplemented).

1.67    **Unsecured Claims** shall mean any Claim or any portion thereof which is asserted against the Debtor and/or its Estate on or before the Claim Bar Date or which is for any reason permitted to be asserted by the Bankruptcy Court against the Debtor and/or its Estate even if the Claim was not asserted on or before the Claim Bar Date and which is not subject to setoff under Section 553 of the Bankruptcy Code or secured by a Lien on property in which the Debtor and/or the Debtor's Estate has an interest.

1.68    **Unsecured Creditor** shall mean the holder of an Unsecured Claim.

1.69    **United States Trustee Fee** shall mean all fees required to be paid by the Debtor pursuant to 28 U.S.C. § 1930(a)(6) to the United States Trustee.

1.70    **Wu or Jeffrey Wu** shall mean Myint Kyaw a/k/a Jeffrey Wu.

## ARTICLE II

Treatment of Administration Expenses and Priority Tax Claims

2.1    **Unclassified Claims**: Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified.

2.2    **Administrative Expense Claims**. Except as otherwise agreed by individual holders of Administrative Expense Claims, Entities due Administrative Expense Claims which are Allowed Claims shall be entitled to receive cash equal to the unpaid portion of their Allowed Administrative Expense Claims on or as soon thereafter as practicable (not to exceed ten (10) days) after the Effective Date of the Plan, provided that (a) such Administrative Expense Claims are not Disputed Claims; (b) Administrative Expense Claims (excluding Tort Claims, if any) that represent liabilities for goods sold and delivered or non-Professional Fee Services rendered to the Debtor in the ordinary course of business between the Filing Date and the Confirmation Date shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, or as otherwise agreed by and between the Debtor and the holder of such Administrative Expense Claim[s] and (c) Professional Fees through and including the Confirmation Date shall be paid within ten (10) days following the date of issuance of a Final Order[s] of the Bankruptcy Court approving such Fees, or as otherwise agreed by and between the Debtor and the holder of such Allowed Claim for Professional Fees.

2.3    **Fees Owed to Professionals for Services Rendered and Disbursements Incurred After the Confirmation Date**.  Following the entry of the Confirmation Order, any requirement that attorneys and other Professionals comply with Sections 327 through 331 (or any other provision) of the Bankruptcy Code to be retained or to seek payment of compensation for services rendered or reimbursement of expenses after such date shall terminate and the Reorganized Debtor may employ and shall pay all attorneys and other Professionals in the ordinary course of its business upon presentation of invoices or bills by such Professionals to the

Reorganized Debtor without any application or notice to, action by, or order or approval of the Bankruptcy Court.

2.4    **Request for Administrative Expense Claim**.  If a Claim is sought to be allowed as an Administrative Expense Claim, the Claimant must file an application with the Bankruptcy Court on appropriate notice with a hearing scheduled for a date and time authorized by the Bankruptcy Court for such hearing for the allowance of such Claim as an Administrative Expense Claim.  Any such application must be served upon the Debtor, the Debtor's counsel (or the Reorganized Debtor and its counsel, as applicable), as well as the United States Trustee and other Creditors, Claimants or other parties in interest in the Debtor's chapter 11 case and all other Persons, Entities otherwise required to be served by the Bankruptcy Code and the Bankruptcy Rules.  Such application must be filed **no later than the date that is 21 days following entry of the Confirmation Order.** The application must expressly provide that objections to the allowance of such asserted Administrative Expense Claims may be filed seven days prior to the return date of the application and be served upon the Debtor and its counsel (or the Reorganized Debtor and its counsel, as applicable), those parties having filed a notice of appearance and request for service and the Office of the United States Trustee.

2.5    **United States Trustee Fees**.  All fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) to the United States trustee will accrue and be timely paid until such time as the bankruptcy case is closed, dismissed, or converted to another chapter under the Bankruptcy Code. Any United States Trustee Fees due and owing on or before the Effective Date of the Plan shall be paid on or before the Effective Date, or as soon as practicable thereafter and under no circumstances shall exceed five (5) business days.

2.6    **Priority Tax Claimants**.  Except to the extent that any particular Priority Tax Claimant agrees to a different treatment in writing, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date; (ii) the date such claim becomes an Allowed Priority Tax Claim, or (iii) the date such Allowed Priority Tax Claim becomes payable pursuant to any agreement between the Debtor and each Holder of an Allowed Priority Tax claim; each Holder of such Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of such allowed Priority Tax Claim: (x) Cash equal to the Allowed Amount of such Allowed Priority Tax Claim on the Effective Date of the Plan; or (y) such other treatment as to which the Allowed Priority Tax Claim older and the Debtor shall have agreed in writing.

## **ARTICLE III**

Classification of Claims and Ownership Interests

3.1    A Claim or Ownership Interest is in a particular class only to the extent that the Claim or Interest qualifies within the description of that class and is in a different class to the extent that the remainder of the Claim or Interest qualified within the description of a different class.

3.2    All Claims and Ownership Interests shall be divided into the following classes which classes shall be mutually exclusive:

3.2.1    Class 1 shall consist of the 41-60 Secured Claim.

3.2.2    Class 2 shall consist of the Secured Claim of Suffolk County.

3.2.3    Class 3 shall consist of the Allowed General Unsecured Claims.

3.2.4    Class 4 shall consist of the Ownership Interests.

## ARTICLE III

### Classification of Claims and Ownership Interests

3.1      A Claim or Ownership Interest is in a particular class only to the extent that the Claim or Interest qualifies within the description of that class and is in a different class to the extent that the remainder of the Claim or Interest qualified within the description of a different class.

3.2      All Claims and Ownership Interests shall be divided into the following classes which classes shall be mutually exclusive:

3.2.1    Class 1 shall consist of the Secured Claim of 41-60 under its first mortgage secured by an interest in the Debtor's Flushing Landmark Property as well as other assets held by other debtors before this Court.

3.2.2    Class 2 shall consist of the Secured Claim of the New York City Department of Taxation and Finance.

3.2.3    Class 3 shall consist of the Allowed General Unsecured Claims.

3.2.4    Class 4 shall consist of Other General Unsecured Claims.

3.2.4    Class 5 shall consist of the Ownership Interest of the Debtor's member.

## ARTICLE IV

### Identification of Classes and Claims and Ownership Interests
### Impaired and Not Impaired Under the Plan

4.1      Class 2 is NOT impaired under the Plan and shall not be entitled to vote.

4.2      Classes 1, 3, 4 and 5 are impaired under the Plan.  Class 5 is not entitled to vote.

4.3      In the event of a controversy as to whether the holders of Claims or Ownership Interests included in a particular class herein are deemed impaired, the Bankruptcy Court shall, after notice and a hearing, resolve any such controversy.

## ARTICLE V

Treatment of Claims and Ownership Interests

5.1   **Class 1 – Secured Claim of 41-60 Main Street LLC**

Class 1 consists of the 41-60 Secured Claim.  41-60 is secured by an interest in the Debtor's Real Property as well as a first in priority, validly perfected lien as against the real property commonly known as 366 Carlls Path, Deer Park, New York also a debtor with a case pending in the Bankruptcy Court.  In addition, 41-60 holds a second position secured by an interest in certain condominium units (to wit: Units 5F, 6B, 6F, 7F, 8A, 11E, 13D, 15B, 15E, 20A, 20B, 20C, 20D and 20E) located at 133-38 Sanford Avenue, Flushing, New York, owned by Victoria Towers Development Corp., also a debtor with a case pending in the Bankruptcy Court.

According to the 41-60 Secured Claim (Claim No. 3), 41-60 is owed the amount of $143,988,021.20 as of the date of the filing of its proof of claim (Claim No. 3) filed on December 15, 2020.  According to the claim, interest in the amount of twenty-four (24%) percent continues to accrue. 41-60 states in its proof of claim that interest shall continue to accrue on the unpaid principal balance from October 31, 2020, at the *per diem* rate of $62,666.67 plus other fees and costs, including, without limitation, attorneys' fees in accordance with the loan documents.

Pursuant to the 41-60 Settlement Agreement, 41-60 has agreed to accept the First Reduced Payment as a reduced payment in full and complete satisfaction of its debt, provided, however, that the First Reduced Payment is received by the First Reduced Payment Deadline.  In the event that 41-60 does not receive the First Reduced Payment by the First Reduced Payment Deadline, 41-60 shall accept the Second Reduced Payment in full and complete satisfaction of its debt, provided, however, that the Second Recued Payment is received by the Second Reduced Payment Deadline.

In the event neither the First Reduced Payment nor the Second Reduced Payment (as may be applicable) is made to 41-60, the 41-60 Settlement Agreement provides that the Debtor shall immediately proceed to an auction of its Real Property (the "Auction").  The 41-60 Settlement Agreement provides, *inter alia*, that the Debtor shall retain an auctioneer/broker to conduct the Auction; that the Auction shall be conducted the week of July 11, 2022 (or such other date as 41-60 agrees in writing); that the bid procedures for the Auction shall have a bid deadline of seven (7) days prior to the Auction; that the bid procedures for the Auction shall provide that the closing on the sale shall occur within twenty (20) days of the Auction (or such other date as 41-60 agreed in writing); that 41-60 is permitted to credit bid up to and including the full amount of its Secured Creditor Claim (as defined in the 41-60 Settlement Agreement); that the Auction of the Real Property shall be conducted; that any auctioneer or broker retained in connection with the Auction shall be permitted to commence marketing or advertising the proposed Auction no earlier than June 15, 2022; that the Auction of the Real Property shall free and clear or all liens, claims and encumbrances, except for the mortgage of 41-60, which shall survive for the purpose of assigning it to any lender for the successful purchaser; and that the Debtor shall execute and deliver a deed or deeds, as the case may be along with all transfer documents required by a title insurance company with respect to the Auction of the Real Property.

The 41-60 Settlement Agreement expressly provides that, if the Debtor fails to comply with the terms of the Plan and the 41-60 Settlement Agreement, 41-60 shall have the remedy of specific performance to enforce the terms of the Plan and the 41-60 Settlement Agreement.

The 41-60 Settlement Agreement provides that, in the event an Auction is conducted, the costs associated with the Auction shall be paid out of the proceeds realized from a sale and, if 41-60 is the successful bidder at Auction, 41-60 shall be responsible for all costs associated with the Auction.

The 41-60 Settlement  Agreement provides that, in the event neither the First Reduced Payment nor the Second Reduced Payment (as may be applicable) is made to 41-60, 41-60 shall provide a carve-out in the amount necessary to pay all allowed costs of administration and to make a distribution to Holders of Allowed Unsecured Claims in the amount of $20,254.00.

The foregoing summary of the 41-60 Settlement Agreement is qualified in its entirety by the actual terms of the 41-60 Settlement Agreement.  To the extent any conflict exists between the foregoing summary of the 41-60 Settlement Agreement and the 41-60 Settlement Agreement, the 41-60 Settlement Agreement controls.

In exchange for this proposed treatment, 41-60 shall vote to accept the Plan.

Class 1 is impaired and entitled to vote.

In exchange for this proposed treatment, 41-60 shall vote to accept the Plan.

Class 1 is impaired under the Plan.

5.2    **Class 2 – Secured Claim of New York City Department of Finance**

While the New York City Department of Finance has not filed a proof of claim, the Debtor owes real estate taxes in the approximate amount of $417,641.31 as of the date of this Plan (subject to continued accruals) which must be satisfied in its entirety either in connection with the closing on the Exit Facility or in connection with the sale of the Real Property pursuant to the 41-60 Settlement Agreement.

The Allowed Secured Claim of the New York City Department of Finance will be paid in Cash within ten (10) business days from the Effective Date.

Class 2 is not impaired under the Plan.

5.3    **Class 3 – Allowed General Unsecured Claims**

Class 3 consists of the Allowed General Unsecured Claims of the Debtor.  A creditor may hold an allowed general unsecured claim by virtue of the Debtor having scheduled the claim in its bankruptcy petition and schedules as a claim that is not disputed, unliquidated or contingent.  In

such instance the claim shall be deemed allowed at the amount scheduled.  In the event that a general unsecured creditor filed a timely proof of claim, and that claim was not objected to by the Debtor, that claim shall also be deemed an allowed general unsecured claim.  Finally, if a creditor disagreed with the amount of the claim as scheduled by the Debtor, that creditor could also have an allowed claim by the filing of a timely proof of claim which claim was not objected to by the Debtor.

The Debtor believes that the following creditors hold Allowed General Unsecured Claims as against the Debtor:

Consolidated Edison Company of New York.  On December 24, 2020, Consolidated Edison Company of New York ("Con Edison") timely filed Claim No. 5 in the amount of $50,583.31.  Accordingly, Con Edison shall have an allowed general unsecured claim in the amount of $50,583.31.

United States Small Business Administration.  On December 1, 2020, Small Business Administration ("SBA") timely filed Claim No. 2 in the amount of $152,065.07 as a Secured Claim.  The SBA does not have a Lien on any assets of the Debtor's Estate. Accordingly, SBA shall have an allowed general unsecured claim in the amount of $152,065.07.

Provided that the closing on the Exit Facility has occurred, and the First Reduced Payment or the Second Reduced Payment (as may be applicable) was made to 41-60 in accordance with the 41-60 Settlement Agreement, the Allowed General Unsecured Claims of Con Edison and the SBA shall be paid in full in Cash within ten (10) business days from the Effective Date.

If neither the First Reduced Payment nor the Second Reduced Payment (as may be applicable) is made to 41-60 in accordance with the 41-60 Settlement Agreement, the sum of $20,264.00 will be available for *pro rata* distributions to Holders of Allowed Unsecured Claims including, but not limited to, the Allowed General Unsecured Claims of Con Edison and the SBA. Distributions to such Holders of Allowed Unsecured Claims including, but not limited to, the Allowed General Unsecured Claims of Con Edison and the SBA shall be made in Cash within ten (10) business days from the Effective Date.

Class 3 is impaired under the Plan.

5.4    **Class 4 – Other General Unsecured Claims**

Class 4 consists of the Other General Unsecured Claims of the Debtor.

Victoria Realty Group LLC ("VRG") is an insider of the Debtor as that term is defined under the Bankruptcy Coe.  VRG shall not receive a distribution under the Plan and shall be subordinated to all other Allowed General Unsecured Claims.

Landmark Portfolio.  Landmark Portfolio shall not receive a distribution under the Plan. In accordance with the Landmark Portfolio Stipulation, Landmark Portfolio shall be paid and satisfied in the Wu chapter 11 case.

Class 4 is impaired under the Plan.

5.5      **Class 5 – Ownership Interests of the Debtor's Member**

Class 5 consists of the Ownership Interest of Flushing Landmark Realty Mezz in the Debtor.  To the extent Allowed Claims are paid in full in accordance with the Plan, the Ownership Interest in the Debtor shall remain.  If neither the First Reduced Payment nor the Second Reduced Payment (as may be applicable) is made to 41-60 in accordance with the 41-60 Settlement Agreement, the Debtor shall have liquidated all or substantially all of its assets and the Debtor will no longer exist.  In that instance, the Debtor's Ownership Interest would be cancelled.

Class 5 is impaired under the Plan but shall not be entitled to vote to accept or reject the Plan.

5.6      **Term of Prior Order, Injunctions or Stays**

a.      Unless otherwise provided, the automatic stay provided for in this case pursuant to Section 362 of the Bankruptcy Code shall remain in full force and effect up to the Effective Date of this Plan and shall thereafter be replaced by the permanent injunction under Article VII of the Plan.

b.      All payments and all distributions hereunder, shall be in full and final satisfaction, settlement, release and discharge of all Claims, other than as provided for in connection with the Allowed Secured Claim of 41-60 to the extent necessary, against the Debtor and the Debtor's Estate; the Debtor and the Debtor's Estate's property; and the Reorganized Debtor and its property. Other than as provided for in the Plan as to 41-60 and its Allowed Secured Claim, under no circumstances shall any additional consideration be payable to any Claimant or Creditor or any other Person or Entity from or by the Debtor.

c.      All distributions to be made to holders of Allowed Claims pursuant to the Plan, other than those distributions made to 41-60 on account of its Secured Claim, shall and must be first applied by the Claimant to that portion (if any) of the Allowed Claim which represents principal, and only to the extent that any such distribution exceeds such principal amount, can and may any portion of such distribution be applied to the portion of the Allowed Claim which represents allowable and allowed interest.

5.6      **Fractional Cents**

Whenever any payment of a fraction of a cent would otherwise be called for to a Claimant, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of 5/10 of one cent or less).

5.7      **No Cash Payments of Less Than Five Dollars ($5.00)**

If a cash payment otherwise provided for by the Plan to or for the account of any Claimant in respect of any Allowed Claim, would be less than five dollars ($5.00) whether in the aggregate

or on any separate payment date provided for in the Plan, notwithstanding any contrary provision of the Plan, the Debtor shall in its sol unfettered discretion have the right to pay the entire amount due in one lump sum payment on or before the Effective Date of the Plan.

### 5.8 **Disputed Claims and Liens**

Disputed Claims which become Allowed Claims pursuant to and by virtue of a Final Order of the Bankruptcy Court on or after the Effective Date of the Plan, automatically shall be deemed to be classified in one of the Classes of Claims herein, in accordance with the criteria set forth in Article IV hereof, or if such Claim is entitled to treatment as an Administrative Expense Claim or a Priority Tax Claim, it shall be treated as such; and such Claim shall receive the treatment which is prescribed for such Class in this Article, or if appropriate, the treatment which is prescribed for Administrative Expense and Priority Tax Claims in Article II hereof, with all payments due through and including such date to such Claimant had the Claim been allowed as of the Effective Date, to be remitted in full to such Claimant on or before ten (10) days following the entry of the Final Order allowing such Claim.

If the validity of a Lien is disputed by the Debtor, then the Claimant shall only be deemed to hold an Allowed Secured Claim if and to the extent that the validity and amount of the Lien is approved by a Final Order of the Bankruptcy Court.

### 5.9 **Time Limit for Objection to Claims**

Objections to Claims shall be filed with the Bankruptcy Court and served upon each holder of each Claim to which objections are being made, not later than twenty-five (25) days after the Confirmation Date, unless such time is extended by the Bankruptcy Court by appropriate order on or before the final date for objections to Claims.

### 5.10 **Resolution of Disputed Claims**

Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor or the Reorganized Debtor's principal shall be entitled to litigate to judgment, settle or withdraw objections to Disputed Claims, in their sole discretion without advance oral or written notice to any party.

### 5.11 **Unclaimed Property by Claimants**

In the event that any Claimant fails for reasons outside of the control of the Reorganized Debtor to present and/or cash any check payment hereunder by the Reorganized Debtor within one-hundred-eight (180) days after the date that the check payment is sent by the Debtor in a manner consistent with the Plan, such Creditor or Claimant shall be deemed to have irrevocably forfeited and waived all rights to said distribution and to any further distribution under the Plan, such Creditor or Claimant shall have no further rights or recourse as against the Reorganized Debtor and its assets and the funds comprising any such distribution shall be forever retained by the Reorganized Debtor.

## ARTICLE VI

Means of Execution of the Plan

6.1     The Plan shall be funded from the proceeds of the Exit Facility or from the Auction of the Real Property pursuant to and in accordance with the 41-60 Settlement Agreement.

## THE INVICTUS REAL ESTATE LLC FINANCING
## THE EXIT FACILITY

The Debtor, along with Lucky Star-Deer Park, LLC, Queen Elizabeth Realty LLC and Wu (as sponsor), have entered into the Term Sheet. In connection with confirmation of the Plan, the Debtor shall seek Bankruptcy Court approval of the Exit Facility.  The Debtor currently anticipates that the Exit Facility will be funded in the gross principal amount of $170,000,000.00 (such Exit Facility being intended to fund this Plan as well as the plans in the chapter 11 cases of Wu and Lucky Star-Deer Park LLC.  The Effective Date of the Plan is expressly conditioned upon, *inter alia*, the closing on the Exit Facility having occurred and there being sufficient proceeds allocated from the Exit Facility to fully fund the Plan.

**Exit Facility**

On the Effective Date, the Reorganized Debtor shall be authorized to enter into and perform and execute and deliver the Exit Facility Documents to which such Reorganized Debtor is contemplated to be a party on the Effective Date. The Reorganized Debtor shall be authorized to borrow under such Exit Facility, if applicable, and use the proceeds of such borrowings on the Effective Date for any use not prohibited thereunder, including to fund distributions under and in accordance with the Plan, and ongoing business operations, general corporate purposes and working capital needs.  Without limiting the forgoing, the Reorganized Debtor shall pay, as and when due, all fees, expenses, losses, damages, indemnities and other amounts, including and applicable refinancing premiums and applicable exit fees, related to the Exit Facility Documents relating to such Exit Facility.

Confirmation of the Plan shall be deemed (i) approval of the Exit Facility and all transactions contemplated hereby and thereby, and all actions to be taken, undertakings to be made, and indebtedness and other obligations to be incurred by the Reorganized Debtor in connection therewith, including the payment of all fees, expenses, losses, damages, indemnities, and other amounts provided for by the Exit Facility Documents, and (ii) authorization for the Reorganized Debtor to enter into, deliver and perform under the Exit Facility Documents.

The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other avoidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

16

## PROPOSED SALE OF THE DEBTOR'S REAL PROPERTY

6.1     In the event neither the First Reduced Payment nor the Second Reduced Payment (as may be applicable) is made to 41-60, the Debtor shall immediately proceed with the Auction of the Real Property pursuant to and in accordance with the 41-60 Settlement Agreement.

In the event of an Auction the Real Property shall be sold.  In accordance with the 41-60 Settlement Agreement, the Real Property shall be transferred free and clear of all liens, claims and encumbrances, with the liens, claims and encumbrances to attach to the proceeds of the sale, to the same extent, validity and priority that said liens, claims and encumbrances existed as of the Filing Date, provided that the mortgage of 41-60 shall survive for the purpose of assigning it to any lender for the successful purchaser.

6.2     The making, recording or delivery of any instrument of transfer in connection with the sale of the Real Property, including, but not limited to the sale of the Flushing Landmark Property to 41-60 or to any third party, shall be exempt from recording tax, transfer tax, mortgage recording tax or any other applicable stamp or similar tax pursuant to section 1146(a) of the Bankruptcy Code.

6.3     In the event of an Auction of the Real Property pursuant to the 41-60 Settlement Agreement, the Debtor shall have no continued interest in the Real Property.

## ARTICLE VII

### Effect of Confirmation

7.1     Except for (i) payment obligations imposed by this Plan; (ii) debts of a kind specified in section 141(d)(6)(A) of the Bankruptcy Code if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) debts of a kind specified in section 1141(d)(6)(B) of the Bankruptcy Code, Confirmation of this Plan shall in accordance with Section 1141 of the Bankruptcy Code be deemed to have discharged and released the Debtor and the Debtor's Estate and the Reorganized Debtor from any Claim that arose or that may be deemed to have arisen at any time at or before the Confirmation Date, whether or not:

      a.     A proof of the Claim is filed or deemed to be filed under sections 501 and/or 1111(a) of the Bankruptcy Code;

      b.     such Claim is allowed under section 502 of the Bankruptcy Code; or

      c.     the holder of any Claim has accepted the Plan.

7.2     Upon and following the Effective Date, all Creditors, Claimants and other Persons or Entities shall be enjoined and prevented from taking any action of any kind or nature, including instituting or continuing any judicial, administrative, action or proceeding, against the Reorganized Debtor to recover or collect on any pre-Confirmation Claims against the Reorganized Debtor, or

for any reason, under any theory of law, fact, or equity, other than and/or apart from receiving the treatment provided for the Claim held by such Creditor, Claimant, Person or Entity under the provisions of the Plan, until and unless there is a Default, in which event the provisions of Article IX of this Plan shall govern and control.

7.3    In accordance with section 1141 of the Bankruptcy Code, Confirmation of the Plan (regardless of whether the Confirmation Order becomes a Final Order of the Bankruptcy Court) shall automatically re-vest the Reorganized Debtor with all of assets of the Debtor's estate, free and clear of all Liens, except for the Debtor's obligations under the 41-60 Settlement Agreement and the payments required to be made pursuant to this Plan Holders of Allowed Claims; and no further Order thereafter shall be required from the Bankruptcy Court nor shall any further notice be provided to Creditors, Claimants, Persons or other Entities having or claiming to have any Claim against the Debtor, the Debtor's Estate, and/or the Reorganized Debtor, with respect to any actions which the Debtor sees fit to take relative to such assets, in the Debtor's sole and unfettered discretion except as otherwise provided for in the Plan.

7.4    The distributions provided for under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, against the Debtor and the Debtor's estate, except as otherwise provided for in the Plan, and/or in the 41-60 Settlement Agreement and on the Effective Date, all Claims against the Debtor, the Debtor's Estate and the Reorganized Debtor, shall be deemed satisfied, discharged, and released in full in consideration of the distributions made or to be made pursuant to the Plan; and all Claimants shall be absolutely barred and precluded from asserting, any other, further, or alternative Claim based on act or omission, transaction, or other activity of any kind or nature against the Debtor, the Reorganized Debtor and/or their respective assets that occurred on or prior to the Filing Date, the Confirmation Date and/or the Effective Date of the Plan, other than as expressly set forth in the Plan.

7.5    Each and every special right and power granted in and under the Bankruptcy Code to debtors and debtors in possession, expressly, including, but not limited to the right and power to object to Claims, pursuant to Section 502 of the Bankruptcy Code; the right to seek and collect monies due and owing to the Debtor under Section 542 of the Bankruptcy Code, and other applicable provisions of the Bankruptcy Code and other applicable laws, rules and regulations, the right to seek to equitably subordinate or void Claims and/or alleged security interests under section 510 of the Bankruptcy Code; and the rights and powers provided for under Section 544, 545, 546, 547, 548, 549 and/or 550 of the Bankruptcy Code to pursue and prosecute actions to avoid and recover preferences or fraudulent conveyances, avoid the fixing of a statutory lien on property, pursue claims relating to post-Filing Date transactions as provided for under the Bankruptcy Code are hereby preserved for the benefit of the Reorganized Debtor.  Prosecution and settlement of such Claims shall be the exclusive right and responsibility of the Reorganized Debtor, to be distributed as set forth herein, except that Creditors and Claimants herein may, on notice to the Reorganized Debtor, object to other Creditor's Claims within the time set forth herein for Objections to Claims (the Debtor's right to be heard at such hearing is expressly reserved) and Creditors may apply to the Bankruptcy Court, on notice to the Debtor, for authorization to pursue the rights and powers reserved to debtors under Sections 544, 545, 546, 547, 548, 549 and/or 550 of the Bankruptcy Code, which applications shall be determined by the Bankruptcy Court in

accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules as well as the Local Rules of the Bankruptcy Court and any applicable Order that may have been entered by the Bankruptcy Court.

7.6     No Discharge In the Event of Liquidation.  In the event neither the First Reduced Payment nor the Second Reduced Payment (as may be applicable) is made to 41-60 in accordance with the 41-60 Settlement Agreement, the Debtor shall proceed with the Auction of the Real Property.  In that event, in accordance with section 1141(d)(3) of the Bankruptcy Code, the Debtor shall not receive a discharge and Section 7.1 and Section 7.4 of this Plan shall not apply and shall have no effect.

## ARTICLE VIII

Default

8.1     **Events of Default**.  The following shall constitute an event of default under the Plan:

If the Reorganized Debtor fails to remit payments as provided for under the Plan, except if (i) such payment or payments is or may be postponed pursuant to the terms and conditions provided for under the Plan; or (ii) the Reorganized Debtor sent the payment or distribution as provided for in the Plan, however, the said payment or distribution was not delivered or received by the Claimant, Creditor, Person or Entity, for any reason(s) outside of the Reorganized Debtor's control, including without limitation, as a result of the failure by said Claimant, Creditor, Person or Entity to comply with the provisions of this Plan.  In accordance with Section 5.11 herein, such Claimants may be deemed to have irrevocably forfeited any and all further rights to payments or distribution under the Plan and/or any other or further rights against the Reorganized Debtor.

8.2     **Cure of Default**.  Except as otherwise set forth in the Plan, in the event a Creditor, Claimant, Person or Entity claims a default by the Reorganized Debtor under the terms of the Plan, such Creditor, Claimant, Person or Entity shall refrain from any action in respect of such claimed default until it first provides written notice of such default to the Reorganized Debtor and its attorneys herein, in the manner conforming with Section 11.5 hereof.  Thereafter, the Reorganized Debtor shall have forty-five (45) days from its receipt of such notice to cure alleged default or to initiate a proceeding before the appropriate forum in the event of any dispute or controversy as to whether any default actually occurred, and during said forty-five (45) days, or to and until twenty (20) days following the date that a Final Order is issued which resolves any controversy or dispute as to whether a default actually occurred, whichever is later, no Claimant, Creditor, Person or Entity shall take any action to terminate this Plan or otherwise against the Reorganized Debtor.  If the alleged default is cured by the Reorganized Debtor within the time periods provided for herein, the complaining Claimant, Creditor, Person or Entity shall fully accept such cure as if there had been no claimed default and shall not present or argue any other or further claims against the Reorganized Debtor in respect to the claimed default.  In the event that the default is not timely cured, the rights of the complaining Claimant, Creditor, Person or Entity as against the Reorganized Debtor shall be limited to initiating a proper proceeding against the Reorganized Debtor in the appropriate forum to recover the remaining distribution owed pursuant to the Plan to

such complaining Claimant, Creditor, Person or Entity, unless there is a subsequent bankruptcy filing or a conversion of the case herein to a chapter 7 bankruptcy case, in which event the entire amount Allowed herein less any distribution actually received thereon shall be entitled to be claimed by the Claimant, Creditor, Person or Entity in the new or converted bankruptcy case.

## **ARTICLE IX**

Retention of Jurisdiction

9.1     Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Plan provides that the Bankruptcy Court shall retain jurisdiction to the fullest extent permitted by the law, including, without limitation, jurisdiction to:

a.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise Allowed under the Plan, including the resolution of any objections to any Claims that may be filed and the request for the entry of an Order or Orders awarding compensation on a final basis to any Professional as may be required under sections 330 and/or 331 of the Bankruptcy Code;

b.     enter an Order confirming the sale of the Debtor's Flushing Landmark Property, if necessary;

c.     hear and determine all matters with respect to the assumption or rejection of any Executory Contract (including unexpired leases) to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature of any required cure of the liquidation or allowance of any Claims arising thereunder;

d.     hear and determine any and all adversary proceedings, motions, applications and contested matters arising out of, under or related to the chapter 11 bankruptcy proceeding;

e.     enter such Orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

f.     hear and determine any disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

g.     consider any modifications to the Plan, cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy court, including, without limitation, the Confirmation Order;

h.      issue injunctions, enter and implement other Orders, or take such other action as may be necessary or appropriate to restrain interference by and Entity with the implementation, consummation or enforcement of the Plan or the Confirmation Order;

i.      enter and implement such Orders as may be necessary or appropriate if the Confirmation Order is reversed for any reason, stayed, revoked, modified or vacated;

j.      hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or other document created in connection with the Plan, the Disclosure Statement and/or the Confirmation Order;

k.      enforce all Orders, judgments, injunctions, releases, exculpations, indemnification and rulings entered in connection with this chapter 11 bankruptcy case;

l.      except as otherwise limited herein, recover all Estate Assets, wherever located;

m.      hear and determine all avoidance actions and other causes of action;

n.      hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

o.      modify the Plan at the request of the Debtor as provided for by applicable law;

p.      hear and determine such other matters as may be provided for in the Confirmation Order or as may be authorized under, or not inconsistent with provisions of the Bankruptcy Code; and

q.      enter a Final Decree closing this chapter 11 bankruptcy case.

## **ARTICLE X**

Releases

Notwithstanding the relief provided for herein, all injunctions and releases are **ONLY** binding on those parties who consensually granted such relief on all potential causes of action under the Plan.  The injunction and release provisions under this Plan are not intended to enjoin any parties other than the ones who have been granted said relief, to commence any cause of action arising from matters that are unrelated to the ones described under the Plan.

The releases are a result of global settlements in the jointly administered chapter 11 cases, and they allow Wu and the jointly administered single asset real estate debtors to reorganize. Without the global settlements and the agreements reached with the parties obtaining releases, Wu and the jointly administered debtors would be unable to proceed.

Effective as of the Effective Date, the Debtor, the Debtor's Estate, Wu and Ip (collectively, in this paragraph the 41-60 Parties) shall be deemed to have and shall have forever released, waived, and discharged conclusively, absolutely, unconditionally and irrevocably to the maximum extent permitted by applicable law, 41-60 and its heirs, agents, legal representatives, successors, and beneficiaries, each in their capacity as such, from any and all claims, interests, obligations (contractual or otherwise), suits, judgments, damages, demands, debts, remedies, rights, causes of action (including avoidance and other actions), rights of setoff and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtor) in connection with or in any way relating to the Debtor, the chapter 11 case, the Disclosure Statement, or the Plan (other than the rights of the Debtor to enforce obligations under the Confirmation Order and the Plan and the contracts, instruments, releases, and other agreements or documents delivered or that survive thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date.

41-60 Release.  Effective as of the Effective Date, 41-60 and its heirs, agents, legal representatives, successors, and beneficiaries (collectively, in this paragraph, the "41-60 Releasors") shall conclusively be deemed to have released the 41-60 Parties, and their respective heirs, agents, legal representatives, successors and beneficiaries each in their capacity as such, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty, or equity arising in this bankruptcy case or the cases of Victoria Towers Development Corp., Lucky Star-Deer Park, LLC and/or Wu, which 41-60 Releasees have, ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date, exclusive of the obligations of the Debtor pursuant to the Plan and the 41-60 Settlement Agreement.

Landmark Portfolio Release. Upon Landmark Portfolio's receipt of the Cash Settlement Payment, the Guaranty and the Deferred Note (each as defined in the Landmark Portfolio Stipulation ("Release Effective Date"), Landmark Portfolio shall be deemed to have and shall have fully releases and forever discharges Wu, the Debtor, Victoria Towers Development Corp. and Lucky Star-Deer Park, LLC, and each of their respective heirs, agents, legal representatives, successors, and beneficiaries, each in their capacity as such, from any and all claims, demands, debts, actions, and causes of action of any kind or nature whatsoever, matured or unmatured, liquidated or unliquidated, absolute or contingent, arising in law or in equity, known or unknown, which Landmark Portfolio has or may have had at any time against Wu, the Debtor, Lucky Star-Deer Park, LLC, Victoria Towers Development Corp., including, but not limited to the Note (as defined in the Landmark Portfolio Stipulation) the QERC Pledge (as defined in the Landmark Portfolio Stipulation) any other Pre-Petition loan documents (as defined in the Landmark Portfolio Stipulation), the Lift Stay Motion (as defined in the Landmark Portfolio Stipulation) the Debtor Mezz Lender Claim (as defined in the Landmark Portfolio Stipulation), the claim asserted in the Debtor's case, the claim asserted in the Victoria Towers Development Corp. case, the claim asserted in the Lucky Star-Deer Park LLC case, provided however, that nothing contained herein shall release obligations under the Plan, the Landmark Portfolio Stipulation, the Deferred Note (as

defined in the Landmark Portfolio Stipulation) or the Guaranty (as defined in the Landmark Portfolio Stipulation).

On the Landmark Portfolio Release Effective Date, Wu, the Debtor, Victoria Towers Development Corp. and Lucky Star-Deer Park LLC, shall be deemed to have and shall have released Landmark Portfolio and its respective heirs, agents, legal representatives, successors, and beneficiaries, each in their capacity as such, from any and all claims, demands, debts, actions, and causes of action of any kind or nature whatsoever, matured or unmatured, liquidated or unliquidated, absolute or contingent, arising in law or in equity, known or unknown, which Wu, the Debtor, Victoria Towers Development Corp. and Lucky Star-Deer Park LLC have or may have had at any time against Landmark Portfolio including, but not limited to the Note (as defined in the Landmark Portfolio Stipulation) the QERC Pledge (as defined in the Landmark Portfolio Stipulation) any other Pre-Petition loan documents (as defined in the Landmark Portfolio Stipulation), the Lift Stay Motion (as defined in the Landmark Portfolio Stipulation) the Debtor Mezz Lender Claim (as defined in the Landmark Portfolio Stipulation), the claim asserted in the Debtor's case, the claim asserted in the Lucky Star-Deer Park LLC case, the claim asserted in the Victoria Towers Development Corp. case, provided however, that nothing contained herein shall release obligations under the Plan, the Landmark Portfolio Stipulation, the Deferred Note (as defined in the Landmark Portfolio Stipulation) or the Guaranty (as defined in the Landmark Portfolio Stipulation).

### Exculpation and Limitation of Liability

For purposes of the Plan, "Exculpated Parties" means: (i) Debtor; (ii) 41-60; (iii) Wu and (iv) Landmark Portfolio, with respect to the foregoing persons/entities set forth herein, each of their respective officers, directors, employees, representatives, advisors, attorneys, notaries (pursuant to the laws of the United States and any other jurisdictions), auditors, agents and professionals, in each case acting in such capacity on or any time after the Petition Date, and any person claiming by or through any of them but excluding any other causes of action preserved by the Debtor.

**ON THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST, THE DEBTOR, OR ANY OTHER PARTY-IN-INTEREST, OR ANY OF THEIR RELATED PERSONS FOR ANY PREPETITION OR POST-PETITION ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR IMPLEMENTATION OF THE DISCLOSURE STATEMENT, THE PLAN, THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN, EXCEPT FOR THE ACTS OR OMISSIONS THAT ARE THE RESULT OF WILLFUL MISCONDUCT, GROSS NEGLIGENCE, FRAUD OR CRIMINAL ACTS: PROVIDED, HOWEVER, THAT (I) THE FOREGOING IS NOT INTENDED TO LIMIT OR OTHERWISE IMPACT ANY DEFENSE OF SOVEREIGN IMMUNITY OR QUALIFIED IMMUNITY THAT MAY BE AVAILABLE UNDER APPLICABLE LAW; (II) EACH**

**EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER, OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH THE PLAN; AND (III) THE FOREGOING EXCULPATION SHALL NOT BE DEEMED TO RELEASE, AFFECT, OR LIMIT ANY OF THE RIGHTS AND OBLIGATIONS OF THE EXCULPATED PARTIES FROM, OR EXCULPATE THE EXCULPATED PARTIES WITH RESPECT TO, ANY OF THE EXCULPATED PARTIES' OBLIGATIONS OR COVENANTS ARISING PURSUANT TO THE CONFIRMED PLAN OR THE CONFIRMATION ORDER.**

## ARTICLE XI

Executory Contracts

11.1     Any and all executory contracts and unexpired leases of the Debtor which are not expressly rejected and disaffirmed herein prior to the Confirmation Date and are not the subject of pending applications to reject or disaffirm as of the Confirmation Date, shall be deemed to assumed by the Reorganized Debtor.

## ARTICLE XII

Miscellaneous Provisions

12.1     <u>Headings</u>.  Headings are utilized in the Plan for the convenience of reference only and shall constitute part of the Plan for any other purpose.

12.2     <u>Defects, Omissions and Amendments to the Plan</u>.  This Plan may be altered, amended, or modified by the Debtor before or after the Confirmation Date as provided for in Section 1127 of the Bankruptcy Code.

12.3     <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, all rights and obligations arising under the Plan shall be governed by and construed in accordance with the laws of the State of New York.

12.4     <u>Severability</u>.  Should any provisions of the Plan be determined to be unenforceable for any reason, such determination shall not limit or affect the enforceability and operative effect of any or all other provisions under the Plan.

12.5     <u>Notices</u>.  Except as otherwise provided for in the Plan, all notices required to be made under the Plan shall be made in writing and shall be mailed by registered or certified mail, return receipt requested to:

a.     If to the Debtor or the Reorganized Debtor, to Flushing Landmark Realty, LLC c/o Jeffrey Wu, 60 Overlook Drive, Lattingtown, New York 11560, or to such other address as may be designated by the Debtor in a notice which is sent to all Entities which at the time have Allowed Claims which have not yet fully received the distributions to which they are entitled under the Plan, and a copy of any notice to the Debtor shall also be sent as provided for herein, to the Debtor's

counsel, The Kantrow Law Group, PLLC, 6901 Jericho Turnpike, Suite 230, Syosset, New York 11791 to the attention of Fred S. Kantrow, Esq.

b.        If to Creditors, Claimants, or other Persons or Entities, to the address which is currently on filed for said parties with the Clerk of the Bankruptcy Court or as otherwise designated in writing by such Creditor, Claimant or Person or Entity.

12.6    <u>Cash Payments by the Debtor</u>.    All payments which shall be made by the Reorganized Debtor to Creditors, Claimants, Person or Entities shall be made by regular check or wire transfer subject to collection or wire transfer, payable in United States currency and shall be deemed to have been made when sent by the Reorganized Debtor, unless said distribution is more than $500,000 in which event the Creditor, Claimant or Entity may request distribution in certified funds.  All distributions made by check shall be sent via regular first-class mail.

12.7    <u>No Waiver</u>.  No failure on the part of any person to exercise, and no delay in exercising any right under the Plan shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

12.8    The obligations of the Debtor, the Reorganized Debtor, Creditors and Claimants under this Plan are several.  No failure by the Debtor or any other Person or Entity to carry out obligations provided for under the Plan shall relieve the Debtor or any other Person or Entity of their respective obligations under this Plan, regardless of whether such failure constitutes an event of Default nor shall any Creditor or Claimant be responsible for the obligations of, or any action taken or omitted by and other Person or Entity under this Plan.

12.9    Except as otherwise provided for herein, this Plan shall be binding upon any and all successors or assigns of the Debtor or the Reorganized Debtor and on any and all successors and assigns of Creditors, Claimants, and Holders of Ownership Interests.

Dated: Flushing, New York            Flushing Landmark Realty, LLC
        March 30, 2022                Debtor

                        BY:    <u>S/Jeffrey Wu</u>
                               Jeffrey Wu, Managing Member

Dated: Syosset, New York
        March 30, 2022


                               The Kantrow Law Group, PLLC
                               Attorneys for the Debtor

                        BY:    <u>S/Fred S. Kantrow</u>
                               Fred S. Kantrow
                               6901 Jericho Turnpike, Suite 230
                               Syosset, New York 11791

516 703 3672
fkantrow@thekantrowlawgroup.com